United States District Court
for the
District of Massachusetts
1:25-cv-11665

---

Emmit Varitimos,

Plaintiff,

-vs-

United States of America,

Defendant.

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1. In August of 2023, Transportation Security Agency ("TSA") officers wrongfully detained and subjected Plaintiff Emmit Varitimos ("Varitimos"), a transgender man, to a wholly unjustified, patently unlawful, and horrifically invasive strip search while passing through security at Norfolk International Airport ("Norfolk Airport") in Norfolk, Virginia, all in direct violation of the TSA's policies and procedures.

2. Varitimos has a medical implant in his testicles as a result of gender-affirming surgery.

3. When the implant triggered a scanner, TSA officers required him to submit to not one, but two strip searches.

4. In direct violation of the TSA's clear and unequivocal policies prohibiting strip searches, TSA officers knowingly and intentionally subjected Varitimos to degrading and unnecessary treatment that caused substantial harm and emotional distress.

5. Varitimos now brings this complaint and demand for a jury trial to hold Defendant responsible by vindicating his rights as guaranteed under the Constitution and laws of the United States.

## Jurisdiction and Venue

6. This Court has subject matter jurisdiction over Defendant, the United States of America, for the tortious actions of federal employees under 28 U.S.C. § 1346(b)(1) and the Federal Torts Claims Act ("FTCA"), 28 U.S.C. § 2674.

7. Varitimos has exhausted his administrative remedies under the FTCA. He filed an administrative complaint against the United States Department of Homeland Security ("DHS") on December 22, 2023.

8. On April 4, 2024, DHS's Office for Civil Rights and Civil Liberties ("CRCL") sent a communication to Varitimos's previous counsel, Niamh Gibbons, Esq., informing her its investigation was closed.

9. Neither Varitimos nor Attorney Gibbons received notice of a final denial of his claim by either DHS or CRCL via certified or registered mail as required by 28 U.S.C. § 2401(b).

10. Venue is proper in this judicial district under 28 U.S.C. § 1402(a)(1) because Varitimos resides in this district.

## Parties

11. Plaintiff Emmit Varitimos is a resident of Massachusetts.

12. Defendant United States of America ("United States") manages DHS, which includes TSA, and is the proper named defendant pursuant to 28 U.S.C. § 2674.

## Facts Alleged

### I. Defendant's agents subject Varitimos to an unlawful, horrifically invasive and wholly unjustified strip search

13. On August 29, 2023, Varitimos was a passenger on a flight from Norfolk Airport to T.F. Green International Airport in Providence, Rhode Island.

14. At approximately 1:00 p.m., as he passed through a security checkpoint at Norfolk Airport, an alert from a screening machine triggered.

15. At the time, the TSA had a policy in place governing administration of pat-downs. It stated, in pertinent part:

> "If there is a screening alarm by technology . . . a pat-down procedure is performed[.] Screening can be conducted in the checkpoint area, or you may request to have a pat-down in private and be accompanied by a companion of your choice. You may bring your carry-on baggage to the private screening area and may request a chair to sit in if needed. You will not be asked to remove or lift any article of clothing to reveal sensitive body areas."

16. Varitimos informed the TSA officers at the checkpoint that he had an implanted medical device and offered to show them his medical records to corroborate his statements.

17. Varitimos so offered because, on multiple other occasions while going through security to board flights, his implanted medical device and a skin graft on his leg have triggered TSA screening machines. After several instances of this occurrence, Varitimos began carrying his medical records with him to show TSA officers when a screening machine inevitably alerted.

18. Throughout his interaction with the TSA officers, Varitimos repeatedly offered to show the officers his medical records to confirm existence of the medical implant.

- 3 -

Unlike Varitimos's prior interactions with TSA officers, the TSA officers at the Norfolk Airport security checkpoint consistently refused to even look at, much less consider, Varitimos's medical records.

19. Without reviewing the medical records, the officers seized all Varitimos's personal property that had been screened, including his phone, and instructed him to step into a private room with three uniformed TSA officers.

20. Once Varitimos was shut inside the closed room and while surrounded by the uniformed TSA officers, the officers ordered Varitimos to partially remove his clothing to fully expose his penis and testicles for examination by the officers.

21. The TSA officers told Varitimos he would not be allowed to fly unless he complied with their order. With no ability to leave his confinement or confer with counsel, Varitimos had no choice but to comply with the TSA officers' unnecessary, unlawful, and degrading demands.

22. The TSA officers examined Varitimos's exposed testicles. They then asked if the implanted medical device could be removed. Varitimos explained that it was a medical implant and could not be removed and covered himself.

23. Notwithstanding this explanation, the TSA officers informed Varitimos that they could not identify the object and that they would need to see his genital area again.

24. Varitimos offered again to show the officers his medical records; again, the TSA officers refused to review the documentation.

25. The very same TSA officers once again ordered Varitimos to partially remove his clothing so they could examine his genitalia a second time.

26. One of the officers inexplicably commented, "we're all guys here," which Varitimos experienced as pressure to comply without objection.

27. The second search was identical to the first, and, as such, was not only unlawful, but utterly unnecessary and also in direct violation of the TSA's policies and procedures.

28. Varitimos's impression was that the TSA officers were motivated by nothing more than voyeuristic curiosity about his physiology as a transgender man.

29. This observation was reinforced when he noticed that, as the TSA officers were examining him, one of the officers faces appeared to indicate disgust while the officer viewed Varitimos's genitalia.

30. After the second strip search, Varitimos was detained for some additional time before, eventually, the officers informed him he could proceed.

31. Varitimos complied with both searches because he was in custody and did not believe that he would be permitted to leave the room.

32. Varitimos was in the room for approximately thirty minutes, and the officers did not allow him to access his phone or other belongings while he was being held.

33. Based on the TSA officers' actions and the TSA's pat-down policy then in force, the TSA officers violated two (2) of the policy's provisions: (1) they ordered Varitimos to expose his genitalia when the policy explicitly states that a person being searched "will not be asked to remove or lift any article of clothing to reveal sensitive body

areas"; and (2) they ordered Varitimos into private room when he could choose whether the officers would conduct the pat-down in the checkpoint area or in a private room.

34. On August 29, 2023, using the TSA's webform, Varitimos submitted a complaint detailing his treatment. The following day, August 30, 2023, Varitimos received a response from the TSA Contact Center. Exhibit 1.

35. The response indicated that TSA was responding to a "pat-down complaint" and expressed "regret" for the "discomfort and inconvenience [he] experienced as a result of the patdown."

36. The response also expressed regret for the "unprofessional treatment" of Varitimos by the officers at the checkpoint and indicated that a copy of his complaint would be sent to the customer support manager at Norfolk Airport.

37. Varitimos received no further communications from either TSA or Norfolk Airport.

38. Since the TSA officers wrongfully detained Varitimos and harassed, humiliated, and degraded him simply because of his status as a transgender man, he has experienced panic, anxiety, insomnia, and increased fear about how he might be treated in the future at airports or other TSA facilities.

## II. Varitimos exhausts his administrative remedies

39. Pursuant to 28 U.S.C. § 2675(a), Varitimos submitted an administrative claim to DHS and CRCL on December 22, 2023.

40. On April 4, 2024, DHS sent a communication via e-mail to Varitimos's previous counsel, Niamh Gibbons, Esq., informing her its investigation was closed.

41. Neither Varitimos nor his then-counsel received notice from DHS by certified or registered mail, as required by 28 U.S.C. § 2401(b), notifying them of a final denial of his claim.

42. DHS thus failed to make a proper and final disposition of Varitimos's claim within six months after it was filed as proscribed under 28 U.S.C. § 2675(a).

## Count 1
### Assault

43. Varitimos incorporates by reference all prior paragraphs.

44. Under Virginia law, "[t]he tort of assault consists of an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in that other person's mind a reasonable apprehension of an imminent battery." *Koffman v. Garnett*, 574 S.E.2d 258, 261 (Va. 2003).

45. The TSA officers' actions, including ordering Varitimos to remove his clothing and expose his genitalia, not just once, but twice, were intended to, and did cause him to apprehend harmful or offensive contact.

46. Varitimos reasonably feared imminent harmful or offensive contact due to the officers' repeated actions and statements.

47. As a result of the overt acts of the TSA officers, Varitimos suffered humiliation, indignity, and physical and emotional injuries.

48. The individual TSA officers committed these acts as employees of the United States while acting in the scope of their employment; they acted within the scope of

the general authority granted to them, in furtherance of their employer's business, and for the accomplishment of the objectives for which they were hired.

49. Pursuant to the Federal Tort Claims Act, Defendant United States is liable for the individual TSA officers' actions.

## Count 2
## False Imprisonment

50. Varitimos incorporates by reference all prior paragraphs.

51. Under Virginia law, "[t]o prevail in an action for false imprisonment, a plaintiff must prove that h[is] liberty was restrained, either by words or acts that []he would fear to disregard, and that there was no sufficient legal excuse to justify the restraint." *Dill v. Kroger Ltd. P'ship I*, 860 S.E.2d 372, 380 (Va. 2021).

52. The TSA officers restrained Varitimos's liberty by detaining him in a private room and preventing him from leaving.

53. Varitimos reasonably feared disregarding the officers' orders due to their authority and the circumstances.

54. There was no sufficient legal excuse to justify the officers' restraint of Varitimos's liberty.

55. As a result of the overt acts of the TSA officers, Varitimos suffered humiliation, indignity, and physical and emotional injuries.

56. The TSA officers committed these acts as employees of the United States while acting in the scope of their employment; they acted within the scope of the general authority granted to them, in furtherance of their employer's business, and for the accomplishment of the objectives for which they were hired.

57. Pursuant to the Federal Tort Claims Act, Defendant United States is liable for the individual TSA officers' actions.

### Count 3
### Intentional infliction of emotional distress

58. Varitimos incorporates by reference all prior paragraphs.

59. Under Virginia law, the elements of intentional infliction of emotional distress are "that: (1) the wrongdoer's conduct was intentional or reckless; 2) the conduct was outrageous or intolerable; 3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and 4) the resulting emotional distress was severe." *SuperValu, Inc. v. Johnson*, 666 S.E.2d 335, 343 (Va. 2008),

60. The TSA officers' conduct, including the repeated and unnecessary searches of Varitimos's genitalia, was intentional or reckless.

61. As a result of the overt acts of the TSA officers, Varitimos suffered humiliation, indignity, and physical and emotional injuries.

62. The TSA officers committed these acts as employees of the United States while acting in the scope of their employment: they acted within the scope of the general authority granted to them, in furtherance of their employer's business, and for the accomplishment of the objectives for which they were hired.

63. Pursuant to the Federal Tort Claims Act, Defendant United States is liable for the individual TSA officers' actions.

## Count 4
## Negligence

64. Varitimos incorporates by reference all prior paragraphs.

65. Under Virginia law, negligence is the "failure to use 'that degree of care which an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury to another.'" *Griffin v. Shively*, 315 S.E.2d 210, 212-13 (Va. 1984) (quoting *Perlin v. Chappell*, 96 S.E.2d 805, 808 (Va. 1957)).

66. The TSA officers failed to use the degree of care which an ordinarily prudent person would exercise under similar circumstances by conducting unnecessary and invasive searches of Varitimos.

67. As a direct and proximate result of the TSA officers' negligence, Varitimos suffered humiliation, indignity, and physical and emotional injuries.

68. The TSA officers committed these acts as employees of the United States while acting in the scope of their employment: they acted within the scope of the general authority granted to them, in furtherance of their employer's business, and for the accomplishment of the objectives for which they were hired.

69. Pursuant to the Federal Tort Claims Act, Defendant United States is liable for the individual TSA officers' actions.

## Count 5
### Gross negligence

70. Varitimos incorporates by reference all prior paragraphs.

71. Under Virginia law, "[g]ross negligence is 'that degree of negligence which shows indifference to others as constitutes an utter disregard of prudence amounting to a complete neglect of the safety of [another]. It must be such a degree of negligence as would shock fair minded men although something less than willful recklessness.'" *Griffin*, 315 S.E.2d 210 at 13 (quoting *Ferguson v. Ferguson*, 181 S.E.2d 648, 653 (Va. 1971).

72. The TSA officers' actions, including the repeated and unnecessary searches of Varitimos's genitalia, showed an utter disregard of prudence amounting to a complete neglect of Varitimos's safety.

73. The degree of negligence exhibited by the TSA officers would shock fair-minded individuals.

74. As a direct and proximate result of the TSA officers' gross negligence, Varitimos suffered humiliation, indignity, and physical and emotional injuries.

75. The TSA officers committed these acts as employees of the United States while acting in the scope of their employment: they acted within the scope of the general authority granted to them, in furtherance of their employer's business, and for the accomplishment of the objectives for which they were hired.

76. Pursuant to the Federal Tort Claims Act, Defendant United States is liable for the individual TSA officers' actions.

## Count 6
**Willful and wanton negligence**

77. Varitimos incorporates by reference all prior paragraphs.

78. Under Virginia law, "[w]illful and wanton negligence is acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Griffin*, 315 S.E.2d 210 at 13.

79. The TSA officers acted consciously in disregard of Varitimos's rights and with reckless indifference to the consequences of their actions.

80. The TSA officers were aware that their conduct would probably cause injury to Varitimos.

81. As a direct and proximate result of the TSA officers' willful and wanton negligence, Varitimos suffered humiliation, indignity, and physical and emotional injuries.

82. Pursuant to the Federal Tort Claims Act, Defendant United States is liable for the individual TSA officers' actions.

## Count 7
**Negligent infliction of emotional distress**

83. Varitimos incorporates by reference all prior paragraphs.

84. Under Virginia law, "[a] plaintiff can recover for negligent infliction of emotional distress where the facts establish 'a clear and unbroken chain of causal connection between the negligent act, the emotional disturbance, and the physical

injury.'" *Doe v. Baker*, 857 S.E.2d 573, 588-89 (Va. 2021) (quoting *Delk v. Columbia/HCA Healthcare Corp.*, 523 S.E.2d 826 ( Va. 2000)

85. The TSA officers' negligent actions, including the unnecessary detention and the repeated and unnecessary searches of Varitimos's genitalia, caused him emotional distress.

86. There was a clear and unbroken chain of causal connection between the TSA officers' negligent actions, Varitimos's emotional disturbance, and the resulting physical injury, including panic, anxiety, and insomnia.

87. The TSA officers committed these acts as employees of the United States while acting in the scope of their employment: they acted within the scope of the general authority granted to them, in furtherance of their employer's business, and for the accomplishment of the objectives for which they were hired.

88. Pursuant to the Federal Tort Claims Act, Defendant United States is liable for the individual TSA officers' actions.

## Request for Relief

89. WHEREFORE, Varitimos respectfully requests the Court grant the following forms of relief:

a. Enter judgment in favor of Varitimos and against the Defendant on all counts of the Complaint;

b. Award compensatory and punitive damages under the Federal Tort Claims Act in an amount determined at trial;

c. Award Varitimos attorneys' fees, costs, and interest as permitted by law; and

d. Grant such further and other relief as may be just and proper.

## Demand for Jury Trial

90. Varitimos demands a trial by jury on all claims and issues.

Dated:	June 8, 2025
	Boston, Massachusetts

Respectfully submitted,

**EMMIT VARITIMOS**

By his attorney,

Joshua O'Neill, Esq.
BBO# 704512
617.356.7784
josh@bostondefender.com

The Boston Defender
www.bostondefender.com
240 Elm St, 2nd Floor
Somerville, MA 02144